UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JESUS MENDOZA, | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 722CV-85 |
| KILOLO KIJAKAZI, | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Jesus Mendoza, proceeding pro se, filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's denial of disability benefits. Plaintiff's application alleged that he became disabled in October 2014 due to various ailments that he claims are caused and/or exacerbated by his sensitivity to electromagnetic fields. Plaintiff has filed previous lawsuits seeking the review of the denial of disability benefits; in fact, he is quite litigious. In fact, Plaintiff "has a long history of filing frivolous claims and therefore, a pre-suit injunction was issued barring him from filing any suit in any federal court without first receiving permission from a magistrate or district court judge." *See Mendoza v. Hinojosa*, *et al.*, 1:14-cv-30, (Docket Nos. 21, 22).

Pending before the Court is Plaintiff's "Motion for Leave to File a Lawsuit in this Court."[1] (Docket No. 3.) In his motion for leave, Plaintiff explains that he has "been home bound for more

---

[1] Plaintiff originally filed his civil action seeking the review of the denial of disability benefits in the Alexandria Division of the Eastern District of Virginia. (Docket No. 1, at 1.) However, the action was subsequently transferred to the McAllen Division of the Southern District of Texas, where Plaintiff resides.

than 9 years with life-threatening electro-hypersensitivity (EHS), and chemical hypersensitivity (CHS)," and that his conditions have been found to be "medically determinable and severe physical impairments." (*Id.* at 1.) Defendant has filed a terse response to Plaintiff's motion for leave. (Docket No. 52.)

To begin with, whether Plaintiff suffers from EHS or CHS is not for the Court to decide. Notably, the Commissioner has found Plaintiff to suffer from severe impairments; however, the medical evidence of record has shown that his conditions are not of a disabling nature such that Plaintiff is wholly unable to work. In addition, all of Plaintiff's litigation history has been found to be frivolous by the Court, and as explained further below, he continues the unfortunate trend of filing frivolous lawsuits. Specifically, Plaintiff continues to file lengthy, rambling, and stream-of-consciousness pleadings, many of which are off-topic (to put it mildly) and/or wholly frivolous. Accordingly, for the reasons discussed further below, it is recommended that Plaintiff's "Motion for Leave to File a Lawsuit in this Court" (Docket No. 3) be denied and that this action be dismissed.

## I. BACKGROUND

As noted, Plaintiff initiated this action against the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g), challenging the denial of his disability benefits. While this action focuses on whether the Commissioner erred in denying Plaintiff disability benefits, Plaintiff's "Motion for Leave to File a Lawsuit in this Court" is necessarily based on proceedings and court rulings in connection with prior litigation filed by Plaintiff. In addition, most of Plaintiff's supporting briefing focuses on that prior litigation, as well as his contention that electro-hypersensitivity (EHS) and chemical hypersensitivity (CHS) exist and are in fact

personally debilitating to him. As such, Plaintiff's prior litigation will be summarized even though it is not otherwise relevant to the instant action.

**A.      Plaintiff's Prior Litigation[2]**

Dating back to 1999, Plaintiff has been an active litigant. Some of his previous lawsuits have been summarized as follows:

> In 1999, Plaintiff filed a suit against the Thomas M. Cooley Law School ("law school"), located in Michigan, in an action styled *Maldonado v. Thomas M. Cooley Law School, et al.*, 7:99-cv-077 (S.D. Tex. Feb. 25, 1999) ("*Cooley*"). Plaintiff named a number of other defendants, including the following: two Michigan judges, Thomas E. Brennan of the Michigan Supreme Court and Roman S. Briggs of the Michigan Court of Appeals; members of the law school board of directors; the Mexican American Legal Defense and Education Fund (MALDEF) and an individual associated with MALDEF; and certain FBI agents. As described by Plaintiff in his motion to recuse, he brought the *Cooley* case to "denounc[e] a fraudulent scheme" by the Michigan judges that involved "defraud[ing] minorities of their federal loans, while giving away law degrees to those affiliated with government agencies." (Docket No. 20, at 1-2.) According to Plaintiff, the

---

[2] The following summary is not meant to be an exhaustive overview, but rather provide insight into Plaintiff's litigation history as a pro se plaintiff. Other courts have provided a more exhaustive list of Plaintiff's litigation history. *See Mendoza v. Hinojosa, et al.*, 1:14-cv-30 (S.D. Tex. 2014) (Docket No. 18, at 2-6). The civil lawsuits that will be addressed in this report include the following: *See, e.g., Maldonado v. Cooley Law School*, 7:99-cv-77 (S.D. Tex. 1999); *Maldonado v. Ashcroft*, 7:03-cv-38 (S.D. Tex. 2003); *Maldonado v. Lindquist, et al.*, 4:05-cv-97 (S.D. Tex. 2005); *Mendoza v. Moron*, 7:05-cv-184 (S.D. Tex. 2005); *Maldonado v. Astrue*, 7:05-cv-133 (S.D. Tex. 2005); *Maldonado v. Alexander*, 191 F. App'x 3 (D.C. Cir. 2006); *Mendoza v. Sharyland ISD, et al.*, 7:11-cv-29 (S.D. Tex. 2011); and *Mendoza v. Hinojosa, et al.*, 1:14-cv-30 (S.D. Tex. 2014).

Michigan judges "incited a federal investigation and malicious electronic surveillance as retaliation for denouncing their fraud of student money." (*Id.*) Plaintiff alleges that this "retaliatory overexposure to radiation caused on Plaintiff a severe electromagnetic sensitivity," which he describes as "a painful, debilitating, and life-threatening health condition." (*Id.* at 7.)

The *Cooley* case was assigned to District Judge Filemon Vela, who referred the case to Magistrate Judge Dorina Ramos for handling. Judge Ramos filed a Report and Recommendation recommending that Plaintiff's claims relating to the law school defendants should be severed and transferred from the Southern District of Texas to the Western District of Michigan. (*Cooley*, Docket No. 80.) Judge Vela adopted the Report and Recommendation and transferred the severed claims over Plaintiff's objections. (*Cooley,* Docket Nos. 91, 92.) Judge Ramos also entered reports recommending that the claims against the remaining defendants be dismissed; Judge Vela likewise adopted these recommendations and the *Cooley* case was dismissed. (*See Cooley*, Docket Nos. 83, 93, 94, 109, 110.)

In 2003, Plaintiff filed a separate lawsuit against John Ashcroft, who was then the Attorney General of the United States. *Maldonado v. Ashcroft*, 7:03-cv-038 (S.D. Tex. Feb. 14, 2003) ("*Ashcroft*"). According to Plaintiff's description in his motion to recuse, he brought this action "to compel the US Attorney General from using directed radiation during any investigation of Plaintiff's activities." (Docket No. 20, at 3.) Plaintiff claimed in the *Ashcroft* case that, as a result of his

actions in exposing the alleged fraud at the Cooley law school, law school officials "instigated a malicious federal investigation which subjected [him] to abusive active electronic surveillance," causing Plaintiff to suffer from "electrical sensitivity." (*Ashcroft*, Docket No. 12, at 3.)

The *Ashcroft* case was assigned to Judge Hinojosa, who referred the case to Judge Ramos for handling. Judge Ramos found that two of Plaintiff's pleadings did not comport with the Court's Local Rules and issued an order striking them from the record; she also denied Plaintiff's request to appear at a hearing by telephone. (*Ashcroft*, Docket Nos. 8, 10.) Plaintiff then filed a motion to recuse Judge Ramos from the case, arguing that she was biased as shown by her rulings in the *Cooley* case and her orders striking his motions and refusing his request to appear by telephone. (*Ashcroft*, Docket No. 13.) Judge Ramos elected to recuse herself until the motion to recuse could be ruled upon by another judge. (*Ashcroft*, Docket No. 18.)

Chief Judge Hinojosa denied the motion for recusal and referred the case once more to Judge Ramos. (*Ashcroft*, Docket No. 24.) After holding an evidentiary hearing, Judge Ramos filed a Report and Recommendation in which she recommended that the *Ashcroft* case be dismissed with prejudice as factually frivolous. (*Ashcroft*, Docket No. 32.) Chief Judge Hinojosa adopted the report, and the case was dismissed on July 31, 2003, over Plaintiff's objections. (*Ashcroft*,

Docket Nos. 33–35.) Plaintiff filed a motion for reconsideration, which was also denied. (*Ashcroft*, Docket Nos. 36, 37.)

Plaintiff appealed the dismissal to the Fifth Circuit Court of Appeals. (*Ashcroft*, Docket No. 38.) Plaintiff described the sole issue he intended to raise on appeal as follows: "Whether [Judge Hinojosa] erred in adopting [Judge Ramos's] Report and Recommendation, when evidence on the record supports the claim that the Report and Recommendation are [sic] tainted by biases and prejudice." (*Ashcroft*, Docket No. 39.) The Fifth Circuit rejected Plaintiff's appeal on December 27, 2004, noting that the issue raised by Plaintiff was whether "his motion to recuse the magistrate judge was erroneously denied." (*Ashcroft*, Docket No. 43, at 1.) The Fifth Circuit explained that Plaintiff's "motion for recusal was based solely on conclusional allegations of prejudice stemming from adverse rulings" and that adverse judicial rulings alone are insufficient to support allegations of judicial bias. *Maldonado v. Ashcroft*, 108 F. App'x 221, 222 (5th Cir. 2004) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994); *Matassarin v. Lynch*, 174 F.3d 549, 571 (5th Cir. 1999)). The court of appeals also agreed with Judge Ramos that "no causal connection is set forth, or is conceivable, between Maldonado's electromagnetic hypersensitivity and the Attorney General of the United States."[3] *Id*.

---

[3] In addition, the Fifth Circuit noted that "this dismissal of his complaint" was due to its "frivolous" nature. *Maldonado v. Ashcroft*, 108 F. App'x 221, 222 (5th Cir. 2004).

*Mendoza v. Astrue*, 7:05-cv-133 (S.D. Tex. 2005) (Docket No. 23, at 2-5).

In 2005 Plaintiff filed numerous lawsuits. In *Maldonado v. Lindquist, et al.*, Plaintiff alleged that because of his previous lawsuits (*Cooley* and *Ashcroft*), the defendants retaliated against him by running him off the road, tampering with his car, and by directing radiation towards him. *Maldonado v. Lindquist, et al.*, 4:05-cv-97 (S.D. Tex. 2005) (Docket Nos. 1, 6). Plaintiff attributed "all of this [retaliation] to the Justice Department generally and the Federal Bureau of Investigation specifically." *See id.* (Docket No. 6, at 1.) This lawsuit was "dismissed for failure to present a set of facts, that, if prove, would describe a legally recognizable claim." *Id.* (Docket No. 6, at 2.) Plaintiff filed a direct appeal, which the Fifth Circuit Court of Appeals "dismissed as frivolous." *Maldonado v. Lindquist*, 197 F. App'x 343, 344 (5th Cir. 2006). The Fifth Circuit also "warned [Plaintiff] that any future frivolous filing will subject him to sanction." *Id.*

Also among those lawsuits that Plaintiff filed in 2005 was *Mendoza v. Moron*, in which he claimed that he was being discriminated against based on his alleged disability. *Mendoza v. Moron*, 7:05-cv-184 (S.D. Tex. 2005). After Plaintiff appealed the dismissal of this lawsuit, the Fifth Circuit determined that his "appeal is without arguable merit and is frivolous," and again warned him "that future frivolous filings will subject [him] to sanctions." *Mendoza v. Moron*, 244 F. App'x 552, 554 (5th Cir. 2007).

In addition, in 2005 Plaintiff sought judicial review of the Social Security Administration's denial of his application for disability benefits. *Maldonado v. Astrue*, 7:05-cv-133 (S.D. Tex. 2005). Notably, the Administrative Law Judge (ALJ) "found from the medical evidence that Plaintiff suffered from electromagnetic sensitivity, which was severe within the meaning of the Regulations." *Id.* (*See* Docket No. 14, at 12.) However, the ALJ determined that Plaintiff was "not disabled" because he could still perform jobs that were available in significant numbers in the

national economy." (*See id.* at 13.) The ALJ also noted that Plaintiff exhibited "some evidence of paranoid thinking." (*See id.* at 12 n.11.)

The next year, "[i]n 2006, Plaintiff sued the director of the National Security Agency in federal court in Washington, D.C., again alleging that federal agencies were surveilling his home." (*See Mendoza v. Hinojosa, et al.*, 1:14-cv-30 (S.D. Tex. 2014) (Docket No. 18, at 4-5 (citing *Maldonado v. Alexander*, 191 F. App'x 3 (D.C. Cir. 2006))).) "[T]he district court properly dismissed the case as frivolous." *Maldonado v. Alexander*, 191 F. App'x 3, at *1 (D.C. Cir. 2006). As the D.C. Circuit Court of Appeals described Plaintiff's complaint as "contain[ing] factual allegation that are so implausible as to be 'fantastic or delusional.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989)).

Fast forward five years, and in 2011 Plaintiff filed suit against Sharyland Independent School District. *Mendoza v. Sharyland ISD, et al.*, 7:11-cv-29 (S.D. Tex. 2011). In his lawsuit, Plaintiff alleged that the defendants violated his constitutional rights, discriminated against him based on his alleged disability, and also retaliated against him. *See id.* (Docket No. 13, ¶¶ 4-8, 123-51.) In his complaint, Plaintiff also alleged that his children suffer from electrical sensitivity and that the electrical configuration of the elementary where they attend is exacerbating their symptoms. *See id.* at ¶¶ 20-27. Plaintiff's lawsuit was eventually dismissed because his allegations were largely "refuted by the record" and otherwise legally meritless. *See id.* (Docket No. 107.)

However, before his lawsuit against Sharyland ISD was fully disposed of, Plaintiff filed another lawsuit in the Southern District of Texas, in which he named as defendants U.S. District Judge Ricardo H. Hinojosa and U.S. Magistrate Judge Peter E. Ormsby, in addition to approximately twelve (12) other defendants. *Jesus Mendoza v. Hinojosa, et al.*, 1:14-cv-30

(Docket Nos. 1, 14). In that action, Plaintiff alleged that Judge Hinojosa and Judge Ormsby committed "fraud on the Court to conceal that the Executive is using [ ] harmful radiation surveillance technologies to retaliate against those who denounce injustice." *Id.* (Docket No. 1-5, at 35.) Plaintiff also accused the named federal judges of refusing to consider his "specific, concrete, admissible and undisputed evidence," for their "irrational cruelty towards" him and his children, and for their refusal to recuse themselves from his cases. *Id.* at 35-39.

"Most of [Plaintiff's] complaint [was] devoted to rehashing the merits of his previous case[s]." *Id.* (Docket No. 18, at 7.) In fact, Plaintiff's action was later dismissed "with prejudice . . . in its entirety for frivolousness." (*Id.* at 1.) As a result, Plaintiff was ordered "to show cause for the frivolousness of th[e] complaint and his many previous lawsuits, and to show why the Court should not enter a pre-filing injunction." (*Id.*) Plaintiff filed a response to the Court's "show case" order; however, he failed to "heed the Court's instruction to limit the response to the issues stated in the order and made no attempt to address the frivolousness of the case." *Id.* (Docket No. 21, at 4-5.)

The Court found that "Plaintiff's long history of vexatious lawsuits, the lack of a good faith basis for the suits, the significant burden on the courts, and the inadequacy of alternative sanctions all indicate that a pre-filing injunction is appropriate." (*Id.* at 5.) Specifically, all of Plaintiff's "pleadings end [ ] with allegations of fraud, deceit, and disability discrimination." (*Id.* at 7.) Furthermore, Plaintiff's "repackaging of the same failed arguments crosses into bad faith motive." (*Id.* at 8.) As such, the Court did "**NOT FIND GOOD CAUSE** for the frivolousness of Plaintiff's claims and **ORDERS an injunction forbidding Plaintiff from filing suit in any federal court without prior permission from a federal judge**." (*Id.* at 1, 9 (emphasis in original).)

Apparently, Plaintiff's numerous lawsuits follow a common pattern. Regardless of the supposed underlying cause of action, "many of Plaintiff's actions are motivated by his desire to prove the existence of electromagnetic hypersensitivity ("EHS"), a condition he claims to suffer from that is "life-threatening, painful and debilitating." (*Id.* at 2.) Due to his EHS, he claims to be disabled to the point that he is unable to work in any capacity, and he often accuses others of discriminating/retaliating against him based on his EHS diagnosis. In fact, Plaintiff routinely "alleges that officials in every branch and level of government [have] discriminated and conspired against him, largely because he suffers from this disease." (*Id.*)

Plaintiff also takes issue with randomly assigned judges to his cases, and he routinely moves for judges to recuse themselves, or moves for visiting judges to be assigned to preside over his lawsuits. He even has a litigation history of suing judges based on alleged bias against him. Finally, numerous judges have labeled his allegations "fantastical" and/or "frivolous," which has resulted in various courts warning him and even sanctioning him. As one court put it, the allegations in Plaintiff's complaint are "simply, in its most favorable light, a *cri de coeur*."[4] *Maldonado v. Lindquist, et al.*, 4:05-cv-97 (S.D. Tex. 2005) (Docket No. 6, at 2).

**B.     The Instant Litigation**

In October 2014, Plaintiff applied for Supplemental Security Income (SSI) under section 1614(a)(3)(A) of Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. (*See* Docket No. 40-5, at 2.)[5] In his application, Plaintiff alleged that he became disabled on October 2, 2014, and he identified sensitivity to electro-magnetic fields and immune system deficiencies as the conditions that prevented him from working. (Docket No. 40-10, at 2; Docket No. 40-11, at 12.)

---

[4] Stated another way, "a passionate appeal, complaint, or protest."

[5] The Commissioner has filed a transcript of the record of the administrative proceedings (Docket Nos. 40-42), which is voluminous (approximately 7,904 pages).

Plaintiff's application was denied initially and on reconsideration. (Docket No. 40-5, at 2, 8.) Plaintiff requested a hearing before an ALJ; in fact, three were held. (*See* Docket No. 40-3, at 35-91; Docket No. 40-4, at 3-12.) The last hearing was held on October 29, 2019; however, it concluded abruptly based on Plaintiff's refusal to "tell the truth under penalty of perjury." (Docket No. 40-4, at 12 ("I'm not willing to take an oath before you like I said.").) The ALJ issued a written decision on May 11, 2020, finding that Plaintiff was not disabled because he was able to perform a full range of work at all exertional levels, albeit with numerous non-exertional limitations.[6] (Docket No. 40-3, at 13.) Based on Plaintiff's "age, education, work experience, and residual functional capacity," the ALJ found him "capable of making a successful adjustment to [ ] work that exists in significant numbers in the national economy." (Docket No. 40-3, at 18.)

Plaintiff filed a request with the Social Security Administration's Appeals Council to review the ALJ's adverse decision. The Appeals Council denied review, rendering the ALJ's decision the Commissioner's final decision for purposes of judicial review. (Docket No. 40-3, at 2-4.) According to the Commissioner, "Plaintiff then timely filed a complaint on March 23, 2021, pursuant to 42 U.S.C. § 405(g)." (Docket No. 52, at 2 (citing Docket No. 1).)

---

[6] The ALJ found that Plaintiff has "the following severe impairment: immunodeficiency." (Docket No. 40-3, at 12.) In addition, "after careful consideration of the entire record," the ALJ found that Plaintiff has the residual functional capacity (RFC) "to perform a full range of work at all exertional levels but with [numerous] nonexertional limitations." (*Id.* at 13.) Here, the ALJ's finding is consistent with the finding of the previous ALJ in Plaintiff's earlier challenge to the Commissioner's denial of his disability benefits. Specifically, the previous ALJ did find "that Plaintiff suffered from electromagnetic sensitivity, which was severe within the meaning of the Regulations." *See Maldonado v. Astrue*, 7:05-cv-133 (Docket No. 14, at 12). However, the ALJ determined that Plaintiff retained the following RFC: "work at all exertional levels that do not require exposure to electrical power or can be performed in the absence of electricity." (*Id.* at 13.) Comparison of the two assessments by the ALJs shows that Plaintiff's condition has not deteriorated significantly.

In his complaint, Plaintiff alleges that he has "been home bound for more than 9 years with life-threatening Electro-hypersensitivity EHS, and Chemical Hypersensitivity, CHS." (Docket No. 1, at 5.) In challenging the Commissioner's denial of benefits, Plaintiff alleges the following: 1) the ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence; 2) disability discrimination and retaliation under Section 504 of the Rehabilitation Act of 1973; and 3) a request for "mandamus relief." (Docket No. 1, at 32-46; Docket No. 1-1, at 1-8.) Plaintiff originally filed this action in the Alexandria Division of the Eastern District of Virginia, arguing that venue was proper in the Alexandria Division because "[a] substantial part of the event giving rise to [his] claims against the Commissioner occurred" there. (*Id.* at 5.) In addition, Plaintiff requested that his case not be transferred "to any federal court in the State of Texas." (*Id.* at 15.) According to Plaintiff, the federal judges in the McAllen Division of the Southern District of Texas (where he resides) have retaliated against him, discriminated against him based on his disability, colluded with other government officials, fabricated evidence, and "conceal[ed] the legitimacy of EHS as a physical-medical condition." (*Id.* at 11-15.)

To put it mildly, Plaintiff "has a long history of filing frivolous claims and therefore, a pre-suit injunction was issued barring him from filing ***any suit in any federal court*** without first receiving permission from a magistrate or district court judge." *See Mendoza v. Hinojosa, et al.*, 1:14-cv-30 (S.D. Tex. 2014) (Docket Nos. 21, 22 (emphasis added)). Aware of this, Plaintiff also filed a "Motion for Leave to File a Lawsuit in this Court" (Alexandria Division). (Docket No. 3.) Ultimately, Plaintiff's request that his case not be transferred to Texas was denied, and this action was transferred to the McAllen Division of the Southern District of Texas. (Docket No. 34.)

Plaintiff's action was randomly assigned to Chief U.S. District Judge Randy Crane. Plaintiff responded by filing a lengthy motion to recuse, which mirrored his claims of bias as

detailed in his complaint. (*Compare* Docket No. 1, at 11-15, *with* Docket No. 44, at 2.) However, his motion to recuse was promptly denied on the merits, and he was ordered to "file an appropriate response to the Court's injunction . . . explaining why this lawsuit should proceed. (Docket Nos. 45, 47.) Plaintiff filed an 85-page response, which—unfortunately—does not focus on his pending civil action. (Docket No. 50.) Instead, his response is mostly dedicated to his opinion as to why his previous lawsuits were not frivolous.[7] (*See id.*)

> Specifically, Plaintiff's response can be summed up by the following passage:
>
> Evidence on the record demonstrates that my past and present litigation has not been frivolous, but to defend myself, and to defend children and other defenseless victims from disability discrimination, retaliation and fraud on the Courts to conceal the legitimacy of Electro-hypersensitivity EHS as a disability; to conceal that exposure to even low levels of radiation can cause severe harm even to adults, and to conceal the harm caused on children by the microwave radiation at school.

(Docket No. 50, at 51.) Plaintiff begins by briefly describing his litigation history. (*Id.* at 3-5.) However, he expands on his history as a pro se plaintiff as his response progresses. In fact, he discusses in detail the following previous cases:

- *Maldonado v. Cooley Law School, et al.*, 7:99-cv-077 (S.D. Tex. 1999) (*Id.* at 69-70);
- *Mendoza v. Moron*, 7:05-cv-184 (S.D. Tex. 2005) (*Id.* at 64);
- *Mendoza v. Sharyland ISD*, *et al.*, 7:11-cv-29 (S.D. Tex. 2011) (*Id.* at 37-44, 58-59); and

---

[7] The Commissioner's response to Plaintiff was brief and not particularly helpful to the Court. (*See* Docket No. 52.)

- *See Mendoza v. Hinojosa*, *et al.*, 1:14-cv-30 (S.D. Tex. 2014) (*Id.* at 45-63).

In addition, as in most of his pleadings in his previous cases, Plaintiff takes pains trying to convince his intended audience that electro-hypersensitivity and chemical hypersensitivity are legitimate medical conditions. (*Id.* at 8-17, 28-36.) He explains his personal diagnosis in the following way:

> I am suffering electrical and chemical hyper-sensitivities, EHS and CHS, neurological, immunological impairments that substantially limit several major life activities and functions including hearing, speaking, breathing, learning, concentrating, thinking, communicating and working. I have a record of these impairments and I am regarded as having those impairments.

(*Id.* at 8.) Plaintiff also dedicates significant portions of his pleading arguing how electro-hypersensitivity impacts children's health (at schools and in general) throughout the world. (*Id.* at 18-27, 32-44.) Finally, throughout his pleading Plaintiff attacks the various judges that have adjudicated his cases. In particular, he takes issue with the pre-suit injunction that U.S. District Judge Micaela Alvarez issued previously. (*See id.* at 54-57, 69-83.)

## II.  ANALYSIS

"Federal courts have the power to enjoin plaintiffs from future filings when those plaintiffs consistently abuse the court system and harass their opponents." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008) (citing *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359–60 (5th Cir. 1986)). In determining whether to impose a pre-suit injunction, the "court must weigh all the relevant circumstances, including the following four factors":

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for

    pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum*, 513 F.3d at 189 (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)). In doing so, Judge Alvarez made clear that "[s]uch an injunction is not made lightly." *Mendoza v. Hinojosa, et al.*, 1:14-cv-30 (Docket No. 21, at 3).

    Here, "the factors weigh strongly in favor of barring Plaintiff from filing [this] suit." *See id.* To begin with, Plaintiff has clearly established a history of frivolous, vexatious, harassing, or duplicative lawsuits, which have been summarized by numerous courts. *See, e.g.*, *Mendoza v. Astrue*, 7:05-cv-133 (Docket No. 23, at 2-5); *Mendoza v. Hinojosa, et al.*, 1:14-cv-30 (Docket No. 21, at 2-6); *see also supra* Part I.A. Regardless of the subject matter of the lawsuit in question, Plaintiff spends significant portions of his pleadings trying "to justify the existence of EHS and to explain [his] symptoms from the disease," as well as detailing the effect that EHS is allegedly having on children and adults worldwide. *Mendoza v. Hinojosa, et al.*, 1:14-cv-30 (Docket No. 21, at 4). The instant litigation is no exception to this. (*See* Docket No. 1, at 2, 5-18; Docket No. 1-1, at 1-8; Docket No. 1-2, at 2-13; Docket No. 50, at 8-44.) However, "[i]t is not the responsibility of the Court to make a scientific conclusion regarding the existence and pervasiveness of EHS."[8] *Mendoza v. Hinojosa, et al.*, 1:14-cv-30 (Docket No. 21, at 4).

---

[8] Here, the ALJ found that the record supports that Plaintiff "has the following severe impairment: immunodeficiency." (Docket No. 40-3, at 12.) To put it lightly, Plaintiff takes issue with this finding. (*See* Docket No. 1, at 32-36 (Claim One).) Plaintiff makes clear his belief that EHS and CHS are disabling conditions to him personally and in support, he cites to his ongoing relationship with Alfred R. Johnson, D.O. (*See, e.g.*, Docket No. 1-2, at 2.) Dr. Johnson began treating Plaintiff as a patient on January 14, 2003. (Docket No. 6-3, at 5.) According to Dr. Johnson, Plaintiff "is suffering from severe hypersensitivities to chemicals, fumes, odors, and a

Next, Plaintiff's litigation has both lacked a good faith basis, and at times been intended merely to harass. In fact, his pleadings and lawsuits have many common themes, including the following: 1) frivolous lawsuits; 2) fanciful allegations; 3) alleged government retaliation; 4) disability discrimination; and 5) alleged judicial misconduct. *See, e.g.*, *Maldonado v. Cooley Law School*, 7:99-cv-77; *Maldonado v. Ashcroft*, 7:03-cv-38; *Maldonado v. Lindquist, et al.*, 4:05-cv-97; *Mendoza v. Moron*, 7:05-cv-184; *Maldonado v. Astrue*, 7:05-cv-133; *Maldonado v. Alexander*, 191 F. App'x 3 (D.C. Cir. 2006); *Mendoza v. Sharyland ISD, et al.*, 7:11-cv-29; *Mendoza v. Hinojosa, et al.*, 1:14-cv-30. Specifically, Plaintiff repeatedly accuses state and federal judges at all levels of the judiciary of fraud, concealing evidence, retaliating against him, and conspiring with other government officials to harm him and his family.[9] *See supra* Part I (Background).

The instant litigation is no different. (*See* Docket No. 1, at 11-14, 32-46, Docket No. 1-1, at 1-8.) For example, Plaintiff repeatedly accuses the ALJ of "systematic removal from the record of medical, scientific and legal evidence," to "conceal" evidence, general "misconduct," and making false statements. (Docket No. 1, at 18-19, 22-25; Docket No. 1-1, at 1, 5, 7.) Furthermore,

---

life-threatening electro-hypersensitivity." (*Id.* at 6.) However, Dr. Johnson has not seen Plaintiff in over 19 years. (*Id.* at 22 ("He has not been seen here in our office since 2004 due to home bound conditions.").) Apparently, their doctor/patient relationship consists primarily of talking on the phone, and Dr. Johnson's assessment of Plaintiff is largely based on his subjective complaints. (*See id.*)

[9] Plaintiff repeatedly alleges that "U.S. District Judge Ricardo H. Hinojosa left pending for more than 10 years" his previous challenge to the Commissioner's denial of his disability benefits. (Docket No. 1, at 11, 16, 42 (citing *Maldonado v. Astrue*, 7:05-cv-133).) In fact, he claims that "[t]he case is still pending." (Docket No. 1, at 16.) However, the record shows that his previous challenge to the Commissioner was denied and the case was terminated three years after he initiated it. *See Maldonado v. Astrue*, 7:05-cv-133 (Docket No. 19). To be sure, Plaintiff's confusion may stem from his attempts to keep litigating that case; as evidenced by his motion to recuse, motion for reconsideration, objections, among other pleadings. *See id.* (Docket Nos. 20-36.)

Plaintiff claims in this lawsuit that the Commissioner discriminated and retaliated against him based on his alleged disability. (*See* Docket No. 1, at 39-43 (Claim Two).)

In addition, Plaintiff's "long history of vexatious lawsuits" does result in a "significant burden on the courts." *Mendoza v. Hinojosa, et al.*, 1:14-cv-30 (Docket No. 21, at 5). In fact, "courts are a finite resource; more time spent on frivolous lawsuits means less time spent on more deserving plaintiffs. Even *sincere* vexatious plaintiffs cost too much." *Id.* (Docket No. 18, at 18 (emphasis in original).) In his lawsuits, Plaintiff does not tailor or limit his pleadings to the relevant action. Rather, he attempts to re-hash claims in previous lawsuits. *See, e.g.*, *Maldonado v. Lindquist, et al.*, 4:05-cv-97, Docket No. 6, at 2 ("Many of his complaints were addressed in his earlier cases. He attempts to re-visit those issues in this case. He may not."); *Mendoza v. Hinojosa, et al.*, 1:14-cv-30, Docket No. 21, at 2 (Plaintiff "attempts to re-litigate several matters lacking factual bases."). In addition, his lawsuits commonly include unnecessarily lengthy and/or rambling pleadings, motions to recuse judges, and motions for reconsideration of adverse rulings. *See, e.g.*, *Maldonado v. Cooley Law School*, 7:99-cv-77; *Maldonado v. Ashcroft*, 7:03-cv-38; *Maldonado v. Lindquist, et al.*, 4:05-cv-97; *Mendoza v. Moron*, 7:05-cv-184; *Maldonado v. Astrue*, 7:05-cv-133; *Maldonado v. Alexander*, 191 F. App'x 3 (D.C. Cir. 2006); *Mendoza v. Sharyland ISD, et al.*, 7:11-cv-29; *Mendoza v. Hinojosa, et al.*, 1:14-cv-30.

Plaintiff continues this trend here. As noted, in this lawsuit against the Commissioner, Plaintiff continues to re-litigate the subject matter of his previous lawsuits. He does this by repeatedly highlighting EHS in general, and its purported effect on people *other than himself*. (*See* Docket No. 1, at 2, 5-18; Docket No. 1-1, at 1-8; Docket No. 1-2, at 2-13; Docket No. 50, at 8-44.) In addition, Plaintiff continues to attack the judiciary and its officers. Accusing them—along with

other government officials—of misconduct, retaliation, and/or discrimination.[10] (*See* Docket No. 1, at 11-14, 32-46, Docket No. 1-1, at 1-8.) "The repackaging of the same failed arguments crosses into bad faith motive." *Mendoza v. Hinojosa, et al.*, 1:14-cv-30 (Docket No. 21, at 8).

Finally, under the circumstances here, adequate alternative sanctions appear to be lacking. Plaintiff previously asserted "that he makes about $100 per month and lives in a trailer on his own property." *Mendoza v. Hinojosa, et al.*, 1:14-cv-30 (Docket No. 18, at 18). "As a result, Plaintiff will not be able to pay monetary sanctions." *Id.* In addition, given that Plaintiff continues to proceed with his lawsuits in forma pauperis, there is no indication that his financial situation has changed.[11] (*See* Docket No. 5 (granting Plaintiff IFP status).)

Although "an injunction is not made lightly," the factors here continue to weigh heavily in favor of the previously imposed pre-suit injunction. *See Mendoza v. Hinojosa*, *et al.*, 1:14-cv-30 (Docket No. 18, at 18). In imposing the injunction, the Court found that "all of [Plaintiff's] litigation . . . can be considered frivolous under the law." *Id.* (Docket No. 21, at 2.) One of the reasons is because all of Plaintiff's "pleadings end [ ] with allegations of fraud, deceit, and disability discrimination." *Id.* (Docket No. 21, at 7). Here again, Plaintiff's instant suit is no exception and should be barred from proceeding on the merits.

### III. CONCLUSION

---

[10] Furthermore, in this lawsuit against the Commissioner Plaintiff requests "Mandamus Relief." (Docket No. 1, at 44.) However, Plaintiff previously requested a writ of mandamus in another lawsuit; however, he was warned that "[f]ederal district courts do not possess the power to issue a writ of mandamus" because "that writ has been expressly revoked." *See Mendoza v. Hinojosa, et al.*, 1:14-cv-30 (Docket No. 18, at 14 (citing Fed. R. Civ. P. 81(b)).) Notwithstanding that warning, Plaintiff continues to request mandamus relief in the district court. (Docket No. 1, at 44.)

[11] Given his financial situation, should the District Court revoke Plaintiff's IFP status, rather than bar this action completely, it would likely prove futile and end with the same result.

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's "Motion for Leave to File a Lawsuit in this Court" (Docket No. 3) be DENIED, that Plaintiff's civil action challenging the Commissioner's denial of disability benefits (Docket No. 1) be barred from proceeding on the merits, and that this action be DISMISSED.

## NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to the parties who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

SO ORDERED, the 9th of March, 2023 at McAllen, Texas.

NADIA S. MEDRANO
United States Magistrate Judge